Filed 12/18/23  Pars Publishing Corp. v. Ordway Corporation CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PARS PUBLISHING CORP., <br><br> Plaintiff, Cross-defendant, and Appellant, <br><br> v. <br><br> ORDWAY CORPORATION, <br><br> Defendant, Cross-complainant, and Respondent. | G061270 <br><br> (Super. Ct. No. 30-2015-00826325) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Thomas Vogele & Associates, Thomas A. Vogele; Kowal Law Group and Timothy M. Kowal for Plaintiff, Cross-defendant, and Appellant.

Godes & Preis, Joseph M. Preis and Joshua R. Mino for Defendant, Cross-complainant, and Respondent.

Pars Publishing Corp. appeals from a judgment after a jury awarded Ordway Corporation $6,766.37 on its cross-complaint for breach of contract.[1] Pars argues insufficient evidence supported the jury's verdict. We disagree and affirm the judgment.

FACTS

Pars alleged various causes of action against Ordway, and Ordway filed counterclaims. Although the appellate record is voluminous, much of it is irrelevant to the limited issue on appeal.[2] We limit our discussion of the facts accordingly.

I. *Substantive Facts*

In October 2014, Pars began negotiating with Ordway to buy a digital varnish and iFoil printer manufactured by MGI Digital Graphic Technology. Ordway sent Pars several quotes for the printer, each totaling over $500,000. None of the quotes mentioned varnish, foil, and swabs (consumables). MGI's technical specifications stated, "[T]he standard delivery includes one 18 liters tank of 3D varnish and one 6 liters tank of 2D varnish."

Pars agreed to purchase the printer for $529,730. The final quote did not mention consumables.

Ordway ordered the printer from MGI. The order included "JETVarnish 3D Starter Kit" and "iFoil Starter Kit." Pars applied for financing based on Ordway's quote.

In November 2014, Kian Hemmen, Ordway's salesperson, and Pars's consultant exchanged e-mails concerning payment. Hemmen requested a down payment. The consultant sought clarification because Pars wanted "to eliminate cash out."

---

[1] Ordway's motion for $1.2 million in contractual attorney fees is pending in the trial court, as is its motion to correct a scrivener's error in the judgment.

[2] Pars admits as much and states it did not have time to prune the appendix after making a final determination of the issues.

Hemmen stated that as long as the financing companies provided prefunding, Pars "will not need to send us any additional money."

Pars and Ordway executed a purchase agreement. The purchase agreement did not mention consumables.

Ordway issued invoices to Pars's financing companies in the total amount of $529,730. Ordway received payment for the printer.

Because Pars was moving locations, the printer remained in containers until Pars relocated to its new facility in February 2015. Varnish was delivered with the printer. There were problems with some of the foil.

Pars ran prints but encountered technical difficulties with the printer. Ordway sent a technician to service the printer, but the problems persisted. Pars printed about a thousand prints and several jobs.

Ultimately, Pars demanded to return the printer to Ordway; the parties disagreed concerning the reason. After Ordway refused, the printer was repossessed.

Ordway's October 2015 invoice of Pars, exhibit No. 720, shows the following five invoices:

(1) December 30, 2014—varnish and foil for $3,369;

(2) February 17, 2015—foil for $1,420.74;

(3) March 5, 2015—foil for $1,173.80;

(4) August 13, 2015—head cleaning swabs for $165.68;

(5) August 13, 2015—varnish for $637.65.

The total amount due was $6,766.87.

II. *Procedural Facts*

Pars's first amended complaint (FAC) alleged causes of action for breach of contract (rescission), fraudulent misrepresentation, negligent misrepresentation, and breach of express warranty. Ordway's first amended cross-complaint alleged causes of action for unjust enrichment, breach of contract, fraud, declaratory relief, express

3

indemnity, and implied/equitable indemnity. Ordway sought $100,000 on its breach of contract cause of action and $6,766.87 on its fraud cause of action. The trial court granted Ordway's motion for summary adjudication on Pars's negligent misrepresentation claim.

At trial, Robert Ordway (Robert) testified concerning exhibit No. 720. On direct examination, Robert testified concerning each of the five invoices and stated Pars had not paid them. He stated Pars owed Ordway $6,766.87. He did not know whether the costs included the foil and varnish that Ordway purchased from MGI.

On cross-examination, while testifying concerning exhibit No. 720, Robert testified "it [was] not a common practice to bill a client for your costs." When counsel asked whether the exhibit included "any subsequent billing for varnish[,]" Robert stated, "The original purchase included varnish." He said Ordway did not subsequently bill Pars for varnish.[3] When counsel asked again whether there was any separate billing on varnish, Robert answered, "The separate billing on the varnish is what we were referring to a minute ago with exhibit [No.] 720." Robert stated Ordway was paid $529,730. Citing to exhibit No. 356, MGI's technical specifications, counsel asked whether the total price included one 18-liter tank of 3D varnish and one 6 liter tank of 2D varnish. Robert responded, "I believe it was, just as I am reading as you are, but I also recall previous conversations when we were asked to break that out because they didn't want to finance consumables." Counsel asked whether those were delivered. Robert said, "If I am going to speculate it is going to be that that first invoice on our statement represents those consumables." Counsel asked whether it was Robert's testimony some of the items were removed from the invoice. Robert replied, "Based on the previous testimony that I heard,

---

[3] Pars's counsel cites to a specific page in the reporter's transcript for the proposition the $6,766.87 was included within the costs of sale. Neither that page nor the following page include a reference to $6,766.87. On the page in question, counsel questioned Robert about exhibit No. 727, the butcher paper detailing Ordway's costs. Exhibit No. 727 is not part of the record on appeal.

4

those items were taken off the invoice and billed separately." When counsel asked whether there were separate billings, Robert stated, "For some of the consumable items on the first invoice on our statement."

On redirect examination, Ordway's counsel asked Robert "why that initial set of varnish that was identified was broken out into a separate invoice." Robert stated the following: "I believe there is [*sic*] at least three sales orders that went back and forth in the final negotiations. And as I heard in testimony or as it was explained to me they were broken out because they did not want to finance the consumables." When counsel asked why, Robert explained, "Consumables are by their nature consumed and varnish, an 18 liter container of varnish would typically last less than a month for most customers. [¶] So instead of paying interest on something for five years, they will break it out and pay for it so that they don't have to finance something that they have consumed. A machine will last for five plus years. A consumable might last for two weeks, so it does not make sense to finance and pay interest on something like that." Citing to exhibit No. 720, counsel asked whether that referred only to the December 30, 2014, varnish and foil invoice. Robert replied, "I believe so. Again, I wasn't personally involved in those details." As to the four remaining invoices, Robert testified Pars ordered the consumables, Ordway shipped them, and Pars had not paid for them.

The jury returned verdicts in Ordway's favor on its breach of contract cause of action but not on its fraud cause of action. It awarded Ordway $6,766.37. The jury returned verdicts for Ordway on Pars's causes of action. The court entered judgment on the verdicts.

Pars filed a motion for new trial. Pars argued the verdicts were inconsistent because the jury awarded Ordway $6,766.37 on its breach of contract cause of action, but Ordway sought that amount on its fraud cause of action, which the jury rejected. Pars asserted the only basis for the $6,766.87 was the consumables, which Ordway did not allege as a basis for its breach of contract cause of action.

5

At a hearing, the trial court denied Pars's new trial motion. The court explained that "as a 13th juror," it heard evidence that established "the factual allegations" regarding Ordway's claim for $6,766.87 for consumables "were incorporated with the breach of contract claim" and that "[t]he evidence was all there."[4]

DISCUSSION

## I. Sufficiency of the Evidence

Pars argues insufficient evidence supported the jury's verdict of $6,766 for the consumables. We disagree.

"Where an appellant argues that a particular verdict is not supported by sufficient evidence, our review '*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination.' [Citation.] 'Substantial' refers to the quality, not the quantity, of the evidence. [Citation.] 'Substantial evidence is evidence that is "of ponderable legal significance," "reasonable in nature, credible, and of solid value," and "'substantial' proof of the essentials which the law requires in a particular case.'" [Citation.] The testimony of a single witness may constitute substantial evidence as long as it is not physically impossible or inherently improbable. [Citations.] [¶] In exercising substantial evidence review, an appellate court does not evaluate the credibility of the witnesses but defers to the trier of fact. [Citations.] Similarly, the court does not reweigh the evidence, but will uphold a judgment that is supported by substantial evidence even if substantial evidence to the contrary also exists. [Citation.]" (*DeNike v. Mathew Enterprises, Inc.* (2022) 76 Cal.App.5th 371, 381-382 (*DeNike*).)

The essential elements of a contract are: "Parties capable of contracting"; "[t]heir consent"; "[a] lawful object"; and "[a] sufficient cause or consideration." (Civ.

---

[4] Pars's appeal from the trial court's postjudgment order awarding Ordway costs is the subject of our contemporaneously filed nonpublished opinion *Pars Publishing Corp. v. Ordway Corporation* (Dec. 18, 2023, G061374).

Code, § 1550; *Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1231.) A contract may be oral or written. (Civ. Code, § 1622; *Westside Estate Agency, Inc. v. Randall* (2016) 6 Cal.App.5th 317, 328.) Breach of contract requires a contract, plaintiff's performance, defendant's breach, and damages. (*Aton, supra,* 93 Cal.App.5th at p. 1231.)

Here, there was sufficient evidence supporting the jury's conclusions Pars contracted for consumables and did not pay for them. Pars agrees there was some evidence it did not want to finance the consumables and Ordway delivered consumables. However, Pars asserts the cost for the consumables was "included in the $529,730 purchase price" and there was insufficient evidence Ordway reinvoiced Pars a different amount excluding the consumables ($529,730 (printer) - $6,766 (consumables) = $522,964), Ordway invoiced Pars separately for $6,766, and Ordway was not paid the total $529,730 purchase price. To the contrary, there was sufficient evidence to support Ordway's crossclaim for breach of contract.

Specifically, there was sufficient evidence Pars did not want to finance the cost of the consumables, and the parties agreed to "separate[] out" the purchase of the consumables from the financing of the printer. Robert testified Pars "asked to break [the consumables] out because they didn't want to finance consumables," and thus "those items were taken off the invoice and billed separately." "The testimony of a single credible witness—even if a party to the action—may constitute 'substantial evidence'" (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1208.)[5] Indeed, Pars

---

[5] Pars cites to Robert's testimony the consumables were separated out was "[b]ased on previous testimony that [he] heard" to suggest his testimony was deficient. He also testified, "I also recall previous conversations when we were asked to break that out because they didn't want to finance consumables." Any inconsistency in Robert's testimony was for the trier of fact to resolve. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 [when evidence sufficient to support judgment, we defer to trial judge's determinations regarding credibility and weight of evidence and disregard evidence contrary to judgment].)

replaced the consumables several times after the purchase of the printer with the initial set of consumables being shipped on December 30, 2014. Pars's subsequently ordered consumables on February 17, 2015, March 5, 2015, and August 13, 2015. Exhibit No. 720 details Pars's orders for the consumables. Robert testified Ordway shipped the consumables to Pars, and Pars did not pay Ordway for the consumables totaling $6,766.87.

As to Pars's claims the evidence was insufficient, there was evidence, Robert's testimony, that established the parties "broke[] out" the consumables during the "back and forth" of negotiations. Thus, the jury could reasonably conclude the consumables were not part of the $529,730 purchase price and Pars would "not need to send [Ordway] any additional money" for *the printer*. There was evidence Pars would have to send Ordway additional money for the consumables it ordered. Although Robert testified Ordway never invoiced Pars for varnish, exhibit No. 720 details Ordway's invoice for consumables. Pars cites to the various dates to assert the parties broke out the consumables after they agreed to the $529,730 purchase price. The jury heard this evidence and concluded otherwise. Pars essentially asks us to reweigh the evidence and substitute our judgment for the jury's verdict. We cannot. (*DeNike, supra,* 76 Cal.App.5th at pp. 381-382.)

*II. Motion for New Trial*

Pars contends the trial court erred by denying its new trial motion because the evidence was insufficient "for the same reasons." Not so.

"'An order denying a motion for new trial will not be set aside unless there was an abuse of discretion that resulted in prejudicial error.' [Citation.] We accord great deference to the trial court's exercise of its wide discretion in ruling on a motion for a new trial. [Citation.] In reviewing an order denying a motion for a new trial, we review the entire record, including the evidence, and independently determine whether any error

8

was prejudicial.  [Citation.]"  (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1018.)

We note that in its new trial motion Pars contended the jury's verdicts were inconsistent because it awarded Ordway $6,766 for breach of contract when that was the amount Ordway sought in its fraud cause of action.  Pars does not raise this claim on appeal.  As we explain above, there was sufficient evidence Pars and Ordway agreed to separate the cost of the consumables from the cost of the printer and Pars ordered consumables that it did not pay for.  Based on the highly deferential standard, we cannot conclude the trial court abused its wide discretion in denying the new trial motion.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


DELANEY, J.

9